The next case is number 2011-16-28, Revision Military v. Balboa. Mr. Vinitsky. Thank you. Good morning, Your Honors, and may it please the Court. The Vermont District Court denied Revision's motion for a preliminary injunction, and we're appealing that decision because we believe the Court made two critical mistakes. First, it applied the wrong standard for a preliminary injunction, and second, it misapplied the ordinary observer test. The first mistake is actually pretty clear as a matter of law. What the Court did is sua sponte, relied on a distinction that the Second Circuit sometimes makes between mandatory and prohibitory injunctions. That was wrong for at least two reasons. First, this Court has made clear in HyberTech and in MyCon Gaming that it's the Federal Circuit standard for And that's what the Court should have followed. But even worse, it wasn't a mandatory injunction. We weren't asking the Court to direct Bobster to do anything. We were asking them to direct Bobster to stop selling infringing goblets. Our law doesn't recognize that distinction. I'm sorry? I think you just said that you thought Federal Circuit law applies. Our law doesn't accept that distinction between mandatory and prohibitory. Exactly right. So just at the outset, by looking at Second Circuit law, the Court just went straight. I mean, it was just wrong. If Second Circuit law applied, then we would be faced with a question of whether this is mandatory or prohibitory. You'd have to decide one or the other because if it is mandatory, they have a much higher standard. Exactly right. And we don't get to that point. Really, the inquiry, the analysis should have stopped. Here's the Federal Circuit. We don't have that kind of distinction here. And Judge Rice... The Chief Judge of the Court didn't understand the Abdul-Wali case. Exactly. And I just made an even if. Even if you wanted to look at it, even if this Court suddenly decided to make that distinction, this isn't that kind of case. But the answer is this heightened standard of clear or substantial likelihood of success has no place in the analysis. And the Court then proceeded to analyze the case through those distorted lenses. I think you're making arguments that I didn't see reflected in the District Court's opinion that this particular design has some functional features. Is that right? There are some functional aspects to it, yes. Like the air holes in the front? Correct. Correct. Like perhaps the holes on the top that allow for ventilation? Correct. But nobody had done those hole designs that way before. I'm just asking because if you have a design and the design has functional elements, you don't get design patent protection for the functional elements. That's right. But it's a hybrid. There's some functional elements to it. But is that right? It's the design of the functional elements, isn't it, that the design patent law is directed to? It must be a practical device in order to get into the design patent law. Otherwise, it goes under the copyright statute. Thank you. Thank you, Your Honor. That's exactly right. That's exactly right. But I don't think that that affects the point that was being discussed particularly, does it? I mean, the design has to have a purpose. Right, and it does. And it's designed in this unique way. And these very small circular shapes that are packed, and actually ours are these little hexagons, which is why they end up being packed that way. Foster then makes them sort of a little more round and still packs them the same way. It's a pretty clear copy in our view. I might just add as just a footnote here that in these cases where the appearance is so clear, it's really going on when the record is replete with photocopies of photographs that obscure. They're blackened images that don't show any details at all. As I understand it, the district court had the benefit of actual samples. Is that right? That's right, Your Honor. And I wondered if the court sends the samples up. I honestly just didn't know. Well, we haven't seen them. You could do that if you want, but I'm just... It might be helpful to have them. It's true, we didn't request them. Okay. We can absolutely arrange for that. I think that would be helpful. We have no objection to provide us with the record. Ordinarily, we could order the record directly from the district court either way. Your Honor, I would have no objection to that because the very reason that Her Honor Below came to that was by an actual review and comparison of the two products side by side as called for by the law. Yes, it would be helpful as we sit here on a field to look at the same issues. Okay. And I was sensitive to the copies, especially in the joint appendix. That's why, I mean, what I pulled into our brief, I tried to pick the clearest images so that it would... No, but it's still very, very difficult. Okay. All right. We'll fix that. I don't know how I'm doing on time. Focusing on the ordinary observer test, what the court did is focus on three minor, what we consider very minor differences. In other words, the shape of the holes, which we just saw, the difference in the shape of the lenses, and a minor difference in the bridge, including this existence or not of a trademark. This court made it perfectly clear in Egyptian Goddess, minor differences between a patented design and an accused article's design cannot and shall not prevent a finding of infringement. The two designs here are, in our view, substantially the same. That's the test. You're supposed to look at the design as a whole. And when the court does that, I think the court will agree with us that a finding of likelihood of success on infringement should have been... Did the court make a determination as to who the ordinary observer is in this case? Did the court? Yeah. Below? Yeah. I don't believe so. How do we know who the ordinary observer is? Well, there was testimony below as to who the ordinary observer is. Our revision sells primarily to the military. These are military ballistic protection goggles that are tested to withstand shrapnel and lasers. And the folks who purchased these, you know, buy them with that... Was there testimony as to how the ordinary military advisor would have observed these items? There was some testimony at the hearing. Judge Rice said, well, I don't know that I need to hear from anybody about what an ordinary observer, you know, who the ordinary observer is because I'm an ordinary observer and I can look at it for myself. Do you challenge that? Do you think she should have made a determination as to who the ordinary observer is? You know, I... Or if she said, I'm the ordinary observer, then you're telling me that that's inconsistent with the record where someone was saying it's the military purchaser? It is inconsistent with the record, but I don't know that she was wrong to have rejected that, frankly. I mean, as I looked at it, and we were talking about having experts and people testifying, it just seemed to me reading this court's case law, it's just an ordinary observer person looking at these things. Well, actually, I hope I'm not wrong about that, but I think that it may be right. You don't infer the total correctly. So, you know, that's really the nub of the argument. The court got the standard wrong. There's obviously a difference between likelihood of success and clear substantial likelihood of success. I don't know how to quantify it. 51% versus 85%? I don't know, but we're entitled to the benefit of that delta on our motion, and so we ask the court to reverse. We're actually asking for reversal and a minimum to vacate and remand. Is there any evidence of deception or confusion to indicate that a consumer would have purchased the accused products thinking they were buying the other products or vice versa? The only thing that's in the record right now is the fact that actually brought this issue to revision's attention, which was they were at a trade show and somebody came up to the booth and said, hey, some folks are selling your doggle over there. So, other than that, I don't think there's anything else in the record. We understand procedurally this is still a preliminary injunction. Correct. There's no final judgment. Correct. On the merits, but there is a view of likelihood or not, which is the focus of the denial of the preliminary injunction. Is that the... That's correct, Your Honor, and nothing further has happened in the case below. The trial was stayed? You know, it wasn't formally stayed, but the court has been treating it as stayed. Typically, they would tell us to get our discovery schedule and ADR schedule. And formal stay of proceedings. That's how I view it because I know the practice very well. I mean, if you miss that deadline, they'll send you a nice note reminding you, and they haven't done that. Okay. Okay. All right, we'll save your rebuttal time, and let's hear from the other side. Thank you very much, Your Honors. And by the way, Your Honors, if you check the docket below, I believe the docket shows the case as listed as stayed due to dependency of the appeal going so quickly. That makes sense since you have taken the appeal. And nobody has yelled at either one of us. Correct. Your Honors, I believe, allowed me to shorten my presentation. We start with the fact that the differences in the two designs have been found to be prominent and immediately apparent to even a casual observer. In point of fact, Her Honor below found that this wasn't even a particularly close case. And as Your Honors are aware, it is based on a product-to-product comparison. If I might inquire briefly... But Gorham doesn't require side-by-side comparison. It's if you look at one and think it's the other. Yes, Your Honor. What Gorham and following cases go to is that especially where you have functional aspects, the law, your circuit, this circuit, recommends that a side-by-side comparison is an appropriate methodology. And for Your Honor's sake, I do not know if... Well, I can't say that we recommend violating the Supreme Court's holding. No, Your Honor. Certainly you're correct that side-by-side is a useful way to compare. Yes, Your Honor. And I would agree with that. And especially in this, we are dealing, of course, with the abuse of discretion standard. However, the abuse of discretion standard also takes into effect, especially, I urge, in a design patent standard, the substantial evidence standard. Again, with respect to the issues the Court has raised, the Court did not abuse its discretion. And under the evidentiary standard, the review by the Court is to be given great deference. And before I go much further... Mr. Glasper, you will no doubt appreciate that the District Court did apply the wrong standard, applied the Second Circuit standard and not our standard. I appreciate that fact, Your Honor. Isn't that significant here? Because, Your Honor, I would say, do we put the cart before the horse or the horse after the cart? The issue here is the design patent itself. That is the heart of the case. What the Court looked at was, aside from making a determination on the injunction, first let us look and see if Egyptian Goddess and the other cases are applicable. Do we have two products that are so similar as to deceive? And the standard that Her Honor found was that the two designs were so different that it wouldn't even deceive a casual observer, a far lower standard than we're talking about anywhere. So to the extent that you get... But she says revision is not meant in terms of proffering clear and substantial evidence that it will likely prove design patent infringement under the ordinary observer test, and that's not the standard. No, Your Honor. However... That's the much heightened standard. However, Your Honor, as the Court may recall, that in the order, the Judge Rice specifically referenced Perdue, saying it's the preponderance of evidence and that one must clearly establish by a clear showing of infringement. That's the clear showing I believe the Court is talking about. She's not raising the bar on the injunction. She is talking about the standard applicable to finding infringement in the first place. That, Your Honor, I urge, is the starting point. Well, there are a lot of things in this order, but one thing that is absolutely clear is that she applied the Second Circuit standard. Your Honor, I would submit from my standpoint that she talks about the Second Circuit standard, which was originally urged by my friend, and also the Federal Circuit. She talked about both of them. And she did find, again, going back to the issue of is there infringement in the first place, that even a casual observer would not be deceived. As Your Honors have already realized, there was kindly a dearth of any evidence required, I submit, under Gaddis, Wing-Shing, and the rest, that there is actual confusion. The eye of the ordinary observer, the accused designed, and the claimed designed, do not clearly reflect the same design. And that's what you must have. One who purchases one thinking they are purchasing the other. Was there any analysis here about what aspects of these products are functional and what aspects are not functional? Yes, Your Honor. The court below, and as well as in the testimony, found that yes, there was admissions that the venting process, and again, and I keep getting away from this, does the court have access to the color photographs in the record that were provided by us as a starting point, perhaps? We haven't seen them. We have access to the records, but we haven't seen them. Very good, Your Honor. You didn't place the color photographs in your briefs or appendix, I gather. I had originally done an appendix with all of this, and as the court knows, I didn't do that quite properly. I was informed, however, that I understood that the color photographs would have been sent up to you as part of the record of the evidence. This comes from the testimony. The record doesn't come automatically. I think that we would be glad to receive from each of you whatever additional information from the record you think we need, and if you want to write a little bit of explanatory information, check with each other so that nobody is taken by surprise. Sure, if I might have a moment, Your Honor. Send us whatever else you both think we need. I was actually referring to Exhibits C and D in Her Honor's order, which were the color photographs. I have a question for you. Yes, ma'am. Because of something that just by chance your colleague mentioned at a trade show of some sort in your brief, you say that Balboa has not sold ballistic eyewear through military procurement contracts as if that were relevant that you're not in the same markets, and yet in passing your colleague mentioned that someone said, oh, they're selling your goggles at a military trade show. So do I read this as an artful use of the indefinite, my grammar is imperfect, of the perfect subjunctive or whatever? Balboa has not sold. You're saying that we didn't do it in the past, but by golly we're doing our best to do it in the present? Two things, Your Honor. Allow me to represent to the court. I represent another client who is very heavily involved in the SHOT Show. The SHOT Show is not specifically a military show. The SHOT Show is more a sporting show. Military shows are such as there's one in London every year where members of the military come in. The SHOT Show is for industry people like Ruger, Winchester, Oakley comes in there. Whatever it is, this sentence looks as if its purpose is to say we're not in the same markets. What's all the fuss about? Oh, no, Your Honor. Let me say that I believe the court's distinction was taking a trip down to irreparable harm. The court made mention that the evidence adduced at trial was that Balboa has not made anything much in the way of sales in the military. In the past, you mean? In the past. They have, however, because the difference that we're looking at is shatterproof versus ballistic. There's a higher standard for ballistic that was created by the military. You see that this is far from a perfect objective statement of facts. All right. We have the clarification. Yes. No, Balboa has done business and has sold to the military well before even revision had. It says has not sold. Balboa has not sold. Has not sold ballistic eyewear. That is absolutely correct. All right. I can see where there's confusion. If I have confused the court, I apologize. Mr. Glasper, you mentioned that the district court referred to the Purdue Pharma case. Yes, Your Honor. On the standard of review, and then the court certainly did that, and then concluded that, and immediately following the reference of the Purdue Pharma on page 19 of the district court's opinion, the court says where there's no immediate challenge to the patent validity and enforceability, the court considers only whether there is clear or substantial likelihood that revision will prove designed patent infringement. So, again, the court is recognizing that Purdue Pharma mentions both infringement and validity. This case is only about infringement, but she applies the same Second Circuit clear and substantial likelihood test. Correct? Your Honor, correct where you stop. And if I might, I urge that if you go down a little farther, she specifically cites to L.A. Gear, a case of this court, saying designed patent is a question of fact, to be proven by a preponderance of the evidence. So, yes, is there, as you were going in the contract case in the first case before the court, perhaps an ambiguity in the matter? Yes. Are there grounds to say that she may have used the Second Circuit versus the Federal Circuit? My argument to that, Your Honor, is she said it's by the preponderance of the evidence. If you read her ruling as a whole, which is appropriate here. Well, preponderance of the evidence is the infringement test, of course, but the question is what test was applied in determining the propriety of the preliminary injunction. And in that regard, she applied the wrong test. I think it's hard for you to debate that issue. Your Honor, I certainly see the point. I certainly understand the point. Again, I urge on the court that her ultimate finding was she didn't even reach as high as the ordinary observer, going back to the designed patent test. She found that the casual observer would not be deceived to that extent as far as the preliminary injunction standard is concerned. Although she may have referenced the Second Circuit. And if I take my friend's version of how we treat that, she did not use, it still comes to the right result. So is your theory that because this is a preliminary injunction that the Supreme Court's rulings for final injunctions in the eBay case don't apply, and you don't consider the equitable factors such as the balance of harms, likelihoods, and irreparable harm, or the likelihood of the various factors that the Supreme Court instructed the Federal Circuit to keep an eye on for final injunction? Your Honor, I believe she addressed, and first I say, no, I agree that the factors are the factors. However, the factors are graded and weighted. The first one, historically, is that first and foremost, it's exceedingly drastic equitable relief. The courts have set the guidelines for that. The court says maintaining the status quo is the least drastic equitable relief. And the status quo, Your Honor, when it comes down to it, is one, they still have to show that there's a reasonable likelihood of success that they're going to show infringement. The court, after much study, after much testimony, after going through and doing the very review that it was supposed to do, found that not only was the ordinary observer, and as a point, the military as an ordinary observer was discussed at length in the transcript as a potential. Was there evidence? There was evidence on the fact that both by Ms. Strubing and by Mr. Fowler below in testimony that the military has a higher standard of looking at things. I believe the word was pickier. You're saying that the trial judge is not the ordinary observer? The trial judge, as agreed by my friend, could be the ordinary observer in this matter. We were pointing out the fact that it could be a higher standard of proof. I'm sorry, you tell us you don't sell to the military. The military has a different, again, no sales through military procurement contracts. What's the difference between ballistic? Has the government in the past bought non-ballistic? In the past, Your Honor, yes. Those are the sales that your client had made. But because the government went through things, the court's familiar with, say, the ANSI standards, the military and the government decided they should have a uniform set of standards that was very clear. You're saying that it's not procurement? I beg your pardon, ma'am. You're saying that it's not procurement. What you said here was military procurement contracts. Now it's done by military procurement contract, yes, Your Honor. Since the brief was filed? I'm still troubled by this double talk. Your Honor, I apologize if the court sees it as double talk. It was not intended as that. What we have is Balboa, let me make it very clear. Balboa, under the new military ballistic standards, and I shouldn't say new, they've been out for the past six or eight years, has not sold to military procurement a goggle for use by the military.  So far. Has it sold anything to go into that market? Yes. Has it sold shatterproof? Yes. But not ballistic. Okay. Any more questions? No questions? All right. Thank you, Mr. Gillespie. Just very quickly, we didn't urge the Second Circuit standard. We certainly didn't urge that there was a distinction between mandatory and prohibitory injunctions. That was at all relevant in the court's analysis. Neither did Bobster's attorney. That was sua sponte. The court came up with that. And I'd just like to say a quick word about the standard of review. It is abuse of discretion, which includes an error of law, the court making an error of law, which the court did on the injunction standard. As for the analysis of the ordinary observer test, as this court has said in Palmer and in the American Eagle case, this court will look whether the lower court made a serious misjudgment of the evidence. And that's, I submit, what happened here. If there are no further questions. Okay. Thank you, Mr. Miniski. Thank you. That concludes the argument of the argument cases this morning. All right.